UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PHYLLIS SCHWARTZ,

        *Plaintiff*,

v.

HILTON HOTELS CORPORATION;
HILTON HHONORS WORLDWIDE, L.L.C.,

        *Defendants*.

Civil Action No. 07-3225 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I.    INTRODUCTION**

This matter comes before the Court upon defendants' motion for summary judgment [D.E. # 24]. Plaintiff Phyllis Schwartz alleges in this personal injury action that she was the victim of negligent maintenance of the shower in her Athens, Greece hotel room in 2006. Compl. ¶¶ 1-12.[1] In a previous order, the Court dismissed defendants Hilton Hellas, EPE ("Hellas") and Ionian Hotel Enterprises, S.A. ("Ionian") (collectively, the "Greek entities") from the case for want of personal jurisdiction [D.E. # 21]. The remaining defendants—Hilton Hotels Corporation ("HHC") and its wholly owned subsidiary, Hilton HHonors Worldwide L.L.C. ("HHR") (collectively, "defendants")—now argue that they owed no duty to Schwartz because they did not own, possess, control, operate, maintain, or manage the premises where she suffered the

---

[1] The paragraphs of each of the complaint's two counts are independently numbered. Except as otherwise noted, citations by paragraph to the complaint refer to the paragraphs in the first count.

1

injury.  Schwartz has not rebutted these facts, instead arguing that defendants owed her a duty of reasonable care due to their status as agents of the Greek entities.

For the reasons that follow, the Court disagrees with plaintiff's position and concludes the following:  (1) because defendants had no ownership or control over the hotel premises, they owed no duty to Schwartz—based on their relationship with the Greek entities—to ensure that the property was free from hazardous conditions; and (2) to the extent defendants owed an independent duty to Schwartz because they booked her trip with the Greek entities, the particular injury she suffered was not reasonably foreseeable, and thus defendants had no duty to prevent or warn of it.  On this undisputed record, the defendants are not liable to plaintiff as a matter of law, and their motion is granted.

## II.     FACTS, PROCEDURAL HISTORY, & JURISDICTION[2]

The facts of this slip and fall case are uncomplicated.  HHC is a Delaware corporation with its principal place of business in California.  Affidavit of Ted C. Raynor ("Raynor Aff.") ¶ 3. It owns 100% of the stock of Hilton International Co. ("HIC"), which in turn owns 100% of the stock of former-defendant Hellas, a Greek corporation.  Raynor Aff. ¶¶ 11-12.  HHC is also the corporate parent of HHR, which was formed under the laws of Delaware, and has its

---

[2] The facts stated herein are taken from the complaint, the parties' briefs and exhibits submitted on the motion, and their statements of material facts submitted pursuant to Local Civil Rule 56.1. In paragraphs 8-16 of her Rule 56.1 statement in response to defendants' Rule 56.1 statement, Schwartz states only that "Plaintiff can neither admit nor deny [defendants' corresponding statement] and leaves defendants to its [sic] proofs."  Pl. R. 56.1 Response ¶¶ 8-16.  This is insufficient.  Plaintiff may not defeat summary judgment by stating only that defendants will at some later time uncertain be held to their proofs; the time to establish that evidence exists to rebut the proofs is now.  The Court deems undisputed each statement that Schwartz neither admitted nor denied in her responsive statement.  L. Civ. R. 56.1, Cmt. [e] ("Consequences of noncompliance"); s*ee also Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000) ("[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.").

headquarters in California.[3]  Raynor Aff. ¶ 18;  Affidavit of Cindy Baker ("Baker Aff.") ¶ 2. Neither HHC nor HHR owned, operated, managed, maintained, or controlled the Hilton Athens Hotel premises at any time relevant here.  Defendants' R. 56.1 Statement of Material Facts ("Def. Facts") ¶¶ 10-16; Raynor Aff. ¶¶ 4-10; Baker Aff. ¶ 4.  Instead, Ionian, an independent Greek entity, owned the hotel, and contracted with Hellas to manage the property and day-to-day hotel operations.  Def. Facts ¶¶ 8-9; Raynor Aff. ¶¶ 13-14.

Schwartz is a "Gold VIP" member of the Hilton HHonors rewards program ("HHonors program") run by HHR.  Compl. ¶ 4; Certification of Nicholas J. Leonardis ("Leonardis Cert.") Ex. B.  The HHonors program gives its members rewards points and mileage for reservations made at hotels within the Hilton chain.  Compl. ¶ 3.  After she had accumulated sufficient rewards points, Schwartz put in a rewards redemption request to HHR, and on October 5, 2005 she received an e-mail from the HHonors program granting her "three free nights at any category 3 property."  Leonardis Cert. Ex. C.  On May 22, 2006, Schwartz reserved a room at the Hilton Athens Hotel—which qualified as a category 3 property—from May 29, 2006 to June 1, 2006. Compl. ¶ 5; Leonardis Cert. Ex. C.

Schwartz alleges that on May 30, 2006, she entered the bathroom of her hotel room, slipped on a puddle of water on the floor, and broke her leg.  Compl. ¶ 7; Leonardis Ex. E.  She claims that a leak in the shower area of the bathroom caused water to leak onto the floor, creating a hazardous condition and, ultimately, her fall.  Compl. ¶¶ 7; Leonardis Cert. Ex. D.  She filed a

---

[3] HHR is denominated as an LLC, but the record is somewhat unclear whether it is in fact a limited liability company or a corporation.  *See* Baker Aff. ¶ 2 (HHR "is a Delaware corporation").  This distinction is immaterial here.

two-count complaint in Middlesex County Superior Court on May 28, 2007.[4]  In it, Schwartz asserts that the Greek entities were responsible for the "maintenance, inspection, supervision, management, cleaning, caring, construction, and/or repair of the Hilton Athens Hotel"; that they were negligent in carrying out those responsibilities; and that HHC and HHR are vicariously liable as a result.  Compl. ¶¶ 8-9.  Defendants timely removed the case to this Court on diversity grounds [D.E. # 1].  28 U.S.C. §§ 1441, 1332.  Upon motion by the Greek entities, Magistrate Judge Patty Shwartz issued a Report & Recommendation ("R&R") on July 29, 2008, recommending that they be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure [D.E. # 19].  The Court adopted the R&R without objection from plaintiff on August 18, 2008 [D.E. # 21].  This motion followed.

### III.  STANDARD OF REVIEW

"A party seeking to recover upon a claim . . . may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."  Fed. R. Civ. P. 56(a).  However, the judgment sought shall be rendered only if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* at (c).  When a party moves for summary judgment, the non-moving party must then provide "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.  An issue is genuine where "the evidence is such that a reasonable jury

---

[4] Count 1 asserts negligence claims against the Greek entities, HHC, and HHR.  Count 2 asserts negligence claims against certain unidentified individuals and entities, reserving the right to amend the complaint to name those defendants upon discovering their identities.  Compl. ¶¶ 2-4.  Schwartz did not amend the complaint, and thus Count 2 is dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 4(m).  Likewise, it appears that another named defendant, Alpha Bank Group, was never served (and in any event Schwartz has not pursued claims against that defendant throughout the case).  That defendant is therefore dismissed as well.

could return a verdict for the non-moving party." *Fowle v. C&C Cola*, 868 F.2d 59, 61 (3d Cir. 1989) (internal citations omitted). To determine whether there is a genuine issue for trial, "all justifiable inferences are to be drawn in" the favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Gray v. York Newspapers*, 957 F.2d 1070, 1078 (3d Cir. 1992). Therefore, the Court may not grant defendants' summary judgment motion if there is sufficient evidence to allow a reasonable jury to return a verdict for Schwartz, *see Anderson,* 477 U.S. at 248, or if the factual dispute is one "that might affect the outcome of the suit under the governing law . . . ." *Id.*

## IV. DISCUSSION

### A. Applicable Law

Though the parties do not discuss choice of law, the Court sits in diversity and must first determine what substantive law applies, using New Jersey's choice of law principles. *See Moran v. Davita, Inc.*, No. 06-5620, 2009 U.S. Dist. LEXIS 22951, at *27 (D.N.J. Mar. 23, 2009) (quoting *Echols v. Pelullo,* 377 F.3d 272, 275 (3d Cir. 2004) (in turn citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941))). "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). The "initial prong" of the New Jersey choice of law analysis similarly "entails an inquiry into whether there is an actual conflict" of substantive law. *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (1996)). "If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own

law to resolve the disputed issue." *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007), *overruled in part*, *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132 (2008).[5]

The parties do not assert that any conflict of law exists, do not speak of Greek tort law in their briefs, have submitted no information concerning Greece's substantive law, and certainly do not advocate for its application. As it turns out, the law of negligence in Greece is sufficiently similar to New Jersey's such that no conflict arises under the facts presented. *Compare Sealord Marine Co. v. Am. Bureau of Shipping*, 220 F. Supp. 2d 260, 272-73 (S.D.N.Y. 2002) (enumerating and describing elements of Greek tort law as governed by article 914 of the Greek Civil Code: (1) an act (or omission) of a person; (2) that is unlawful (*i.e.*, that violates a general duty of safety and care); (c) negligence (or intent) on the part of the actor; (d) damages; and (e) an adequate causative link between the act (or omission) and the damage suffered); *Carbotrade S.p.A. v. Bureau Veritas*, No. 92-1459, 1998 U.S. Dist. LEXIS 10575, at *17-20 (S.D.N.Y. Jul. 13, 1998) (same) *with Polzo v. County of Essex*, 196 N.J. 569, 584 (2008) (common law negligence action requires a plaintiff to "prove four core elements: (1) [a] duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages") (internal citations and quotations omitted). Thus, the Court applies the substantive law of New Jersey.

---

[5] The New Jersey Supreme Court recently eschewed a "governmental interest" approach to choice of law analysis, in favor of a "most significant relationship" test, when reviewing tort claims. *See generally Camp Jaycee*, 197 N.J. at 143-56 (explicating choice of law analysis under the Second Restatement on Conflict of Laws). In doing so, however, the court reiterated, citing *Rowe*, that if there is no actual conflict, there is "no choice of law issue to be resolved." *Id.* at 143 (citing *Rowe*, 189 N.J. at 621). This Court thus reads *Camp Jaycee* to continue the practice of applying the forum state's tort law where no actual conflict exists, *see Rowe*, 189 N.J. at 621, despite the current presumption that the law of the state where the injury occurred applies where such a conflict does exist.

**B. Analysis**

Not subject to dispute are the core principles of law applicable here, which are expounded in the Restatement (Second) of Torts (1965) ("Second Restatement of Torts") and the Restatement (Third) of Agency (2005) ("Third Restatement of Agency"); these compilations have been adopted by New Jersey courts. *See Parks v. Rogers*, 176 N.J. 491, 498-99 (2003) (discussing cases and the Second Restatement of Torts); *NCP Litig. Trust v. KPMG LLP*, 187 N.J. 353, 366-67 (2006) (discussing the Third Restatement of Agency). With respect to premises liability, the Second Restatement of Torts sets forth the following standard:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees,
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.[6] Put more simply:

> [A] landowner must exercise reasonable care for an invitee's safety. That includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner. The landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered.

---

[6] It is undisputed that the Greek entities were—and the remaining defendants were not—possessors of the hotel premises. Restatement (Second) of Torts § 328E. There is also no question that Schwartz was an invitee of the Hilton Athens Hotel. *Id.* § 332.

*Monaco v. Hartz Mt. Corp.*, 178 N.J. 401, 414-15 (2004).

Extrapolating this standard—and assuming *arguendo* that the Greek entities were negligent—Schwartz attempts to impute to HHC and HHR the duty of reasonable care that the Greek entities owed to her as owner and manager of the Hilton Athens Hotel. She argues that the remaining defendants, as agents of the Greek entities,[7] owed her the same duty of care as did the actual owners and possessors of the subject premises. Specifically, Schwartz claims that

> [a]s the representative, agent, servant[,] or employee of the defendant, Ionian Hotels[,] the defendant [HHR], and defendant [HHC], is [sic] bound by the same duty of care which would be owed by the defendant Ionian Hotel Enterprises who owned the premises, as well as the defendant [Hellas], who managed, maintained[,] and operated the hotel.

Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Pl. Opp. Br.") at 2.[8] As a result, she opines, HHC and HHR are "vicariously liable to the plaintiff for any acts of negligence" taken by the Greek entities. Leonardis Cert. ¶ 12. Schwartz cites no authority in support of her position, which is plainly incorrect. An agent is liable in tort to a third party for his or her own tortious conduct—and his or her own tortious conduct only. The agent is not "subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of '*respondeat inferior*.'" Third Restatement of Agency § 7.01 & Cmt. (d); *see also Speer v. Taira Lynn Marine, Ltd.*, 116 F. Supp. 2d 826, 830 (S.D. Tex.

---

[7] It is subject to reasonable debate whether HHC—the ultimate corporate parent of Hellas—was in fact acting as the agent of its wholly owned subsidiary. Because defendants do not contest this aspect of Schwartz's argument, however, the Court assumes for argument's sake that both HHR and HHC were in fact agents of the Greek entities.

[8] Schwartz has not paginated her opposition papers, and has opposed the motion in one single packet. The Court has cited the brief as it would were the brief paginated and submitted separately from the accompanying motion papers, as prescribed by the local rules. *See* L. Civ. R. 56.1(a) & Cmt. b.

8

2000) ("There is no such thing as *respondeat inferior*."). This hornbook principle becomes all the more forceful when applied to the law of premises liability. Holding an absent agent liable for the negligent acts of a possessor taken upon his or her own land would effectively prescribe strict liability for the agent. This is a particularly illogical result where, as here, the agent has no ability to control the possessor, monitor the premises, or remediate conditions that are or could become hazardous. *See Lavine v. General Mills, Inc.,* 519 F. Supp. 332, 335 (N.D. Ga. 1981) (in tort action against travel agent for injury suffered while on vacation, "[t]o the extent that plaintiff's . . . claims are based upon premises liability (i.e., failure to warn of a hazardous condition, failure to protect an invitee), they support no cause of action against these defendants, since neither of them was the owner or occupier of the island where plaintiff fell.").

Other provisions of the Second Restatement of Torts bolster the Court's conclusion that before liability will attach to the agent *qua* agent of a possessor of land, the agent must have at least some physical connection to that land. Section 383, entitled "Liability of Persons Acting on Behalf of Possessor," states that "[o]ne who *does an act or carries on an activity upon land* on behalf of the possessor is subject to the same liability . . . for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land." Restatement (Second) of Torts § 383 (emphasis added). Furthermore, comment (c) to § 383 notes explicitly that "[t]he rule . . . applies only to harm done by some act done or activity carried on upon the land." *Id.* cmt. (c). Thus, defendants are not vicariously liable to Schwartz by virtue of their status as the Greek entities' agents, and, concomitantly, they are not liable to her because they took no actions on the premises where Schwartz suffered the injury.

Schwartz fails to posit a good reason why these principles of black-letter agency and tort law do not apply here. The Court therefore holds that HHC and HHR owed no duty of

9

reasonable care to prevent hazardous conditions inside Schwartz's hotel bathroom arising out of their agency relationship with the Greek entities.

That does not end the inquiry, however. Implicit in Schwartz's argument is that HHC and HHR were acting as *de facto* travel or booking agents when she booked her stay at the Hilton Athens Hotel through the HHonors program. *See* Leonardis Cert. ¶ 9 ("It was defendant, HHR as the representative of defendant, HHC who not only recommended the Hilton Athens Hotel, but also arranged for the booking . . . ."). States have taken varying approaches with respect to travel agents' liability when things go wrong on trips that they book.[9] Though case law on the issue is sparse in New Jersey, courts appear to impose some limited duty upon travel agents to exercise reasonable care in favor of their clients. In *Josephs v. Fuller*, 186 N.J. Super. 47 (Bergen County Ct. 1982), a case brought by travelers against a travel agent for the substandard accommodations that the agent booked for them, the court imposed a duty upon the agent, holding that "when a traveler relies on the recommendations of a travel agent and suffers damage because of accommodations so totally unacceptable that any reasonable travel agent would have known not to make such recommendations, the travel agent is liable." *Josephs*, 186 N.J. Super.

---

[9] *Compare, e.g., Lavine*, 519 F. Supp. at 336-37 (no liability to travel agent under Georgia law); *Heidle v. Interval Int'l U.S.A. Corp.*, No. 01-663, 2003 U.S. Dist. LEXIS 18505, at *9 & n.10 (W.D.N.Y. Sept. 9, 2003) (citing cases and stating that "[u]nder New York law, tour companies and travel agents owe no duty to [travelers] to inform them of possible hazardous conditions on the property of others."); *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 69-71 (D.R.I 2002) (collecting cases from states that impose no duty upon travel agents); *Connolly v. Samuelson,* 671 F. Supp. 1312, 1317 (D. Kan. 1987) (no liability to travel agent under Kansas law) *with Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69, 71-72 (Ariz. Ct. App. 1994) (imposing duty upon travel agents "to use reasonable efforts to give [the traveler] information which is relevant to affairs entrusted to him"); *Markland v. Travel Travel Southfield, Inc.*, 810 S.W.2d 81, 83-84 (Mo. Ct. App. 1991) (imposing duty to use reasonable efforts to apprise a customer of material information); *Douglas v. Steele*, 816 P.2d 586, 590 (Okla. Civ. App. 1991) ("[A] travel agent . . . ha[s] a duty to discover and disclose to [the traveler] material information which is reasonably obtainable unless the information is so clearly obvious and apparent to the principal that, as a matter of law, the travel agent would not be negligent in failing to disclose it").

at 51.  In *Rodriguez v. Cardona Travel Bureau*, 216 N.J. Super. 226 (Law Div. 1986), the court imposed a duty upon travel agents to exercise "good faith and reasonable skill, care and diligence in the execution of the commission." *Rodriguez*, 216 N.J. Super. at 229.  It held that the duty "is independent of the relationship between th[e] travel agent and the carrier." *Id.* at 230.  Given this authority, the Court assumes without deciding that HHC and HHR owed an independent duty to exercise reasonable care under the circumstances when acting as a travel agent for Schwartz.

Even assuming that, as travel agents, defendants owed some independent duty to Schwartz, the injury that she suffered—a slip and fall as a result of an allegedly defective shower—was not reasonably foreseeable from the perspective of a travel agent.  As the Ninth Circuit has explained:

> *A travel agent is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel.* Nonetheless, it does not follow that because a travel agent cannot possibly presage all dangers, he should be excused entirely from his fiduciary duties toward his principal to warn of those dangers *of which he is aware, or should be aware in the exercise of due care*.

*Rookard v. Mexicoach*, 680 F.2d 1257, 1263 (9th Cir. 1982) (emphasis added); *see also United Airlines, Inc. v. Lerner*, 410 N.E.2d 225, 228 (Ill. App. Ct. 1980) ("The law requires only that [travel] agents be loyal, not prescient.").  *Rookard* persuasively stands for the proposition that a travel agent is emphatically not an insurer, and owes no duty to warn of or protect against every potential incident that may come to pass during an overseas trip.

Accordingly, the Court concludes that New Jersey courts would not impose a duty upon travel agents to warn of specific dangers that are unknown and inherent in the destinations to which his or her principals frequent.  This conclusion is consonant with New Jersey law that makes the foreseeability of harm a "crucial element in determining whether imposition of a duty

on an alleged tortfeasor is appropriate." *Carvalho ex rel. Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572-73 (1996) (quoting *Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc.,* 135 N.J. 182, 194 (1994)). It is also in accord with policy and fairness considerations: To hold travel agents liable for each happenstance that ultimately causes an injury would elevate such agents to insurers. Significantly increased costs for traveling consumers and a decreased supply of travel agents are two predictable and undesirable consequences of imposing a duty to prevent common injuries from unknown and inherent dangers. *See Carvalho*, 143 N.J. at 572 (quoting *Carter Lincoln-Mercury,* 135 N.J. at 194-95) ("Once the foreseeability of an injured party is established, . . . considerations of fairness and policy govern whether the imposition of a duty is warranted.")

Applying the above, a leaky shower is an inherent danger, its foreseeability in Schwartz's hotel room is in no wise established and, as such, a travel agent would have not been duty-bound to predict or forewarn Schwartz of the condition. Thus, even imposing on HHC and HHR the status of travel agent for Schwartz, as a matter of well-established law, defendants owed no duty to Schwartz to protect against her fall in the bathroom of the Hilton Athens Hotel.

**V.      CONCLUSION**

For the reasons discussed above, defendants' motion for summary judgment is granted.[10]

An appropriate order will be entered.

/s/ Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge

---

[10] The Court's disposition of this motion results in the termination of this case. Currently pending is an appeal [D.E. # 31] from an order issued by Magistrate Judge Shwartz permitting Schwartz and her husband to be deposed and to ultimately testify at trial. The order from which defendants appeal [D.E. # 30], however, was conditioned upon this Court's denial of the summary judgment motion. Because the Court grants the motion, the magistrate appeal is moot and will be terminated as such. This disposition will be also reflected in the order accompanying this opinion.

13